**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| | § | |
| Jose Angel Carrizales | § | Case Number: |
| 448 Decatur St. | § | |
| Toledo, OH 43609, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Judge |
| v. | § | |
| | § | Magistrate |
| Correction Officer Lambert | § | |
| c/o CoreCivic, Inc. dba Northeast Ohio | § | JURY DEMAND ENDORSED HEREON |
| Correctional Center | § | |
| 2240 Hubbard Rd. | § | |
| Youngstown, OH 44505, | § | |
| | § | |
| Correction Officers John and Jane Does | § | |
| 1 to 25, whose names are unknown | § | |
| c/o CoreCivic, Inc. dba Northeast Ohio | § | |
| Correctional Center | § | |
| 2240 Hubbard Rd. | § | |
| Youngstown, OH 44505, | § | |
| | § | |
| David Bobby, Warden | § | |
| c/o CoreCivic, Inc. dba Northeast Ohio | § | |
| Correctional Center | § | |
| 2240 Hubbard Rd. | § | |
| Youngstown, OH 44505, | § | |
| | § | |
| Nicole Kolenich, RN | § | |
| c/o CoreCivic, Inc. dba Northeast Ohio | § | |
| Correctional Center | § | |
| 2240 Hubbard Rd. | § | |
| Youngstown, OH 44505, | § | |
| | § | |
| The State of Ohio, Ohio Department of | § | |
| Rehabilitation & Correction, Northeast | § | |
| Ohio Correctional Institution | § | |
| 4545 Fisher Road, Suite D | § | |
| Columbus, OH 43228 | § | |
| c/o Ohio Attorney General | § | |
| 30 E. Broad St., 14th Floor | § | |

Columbus, OH 43215,                          §
                                             §
The State of Ohio, Ohio Department of        §
Medicaid, Ohio Tort Recovery Unit            §
50 W. Town St., Ste. 400                     §
Columbus, OH 43215                           §
c/o Ohio Attorney General                    §
30 E. Broad St., 14th Floor                  §
Columbus, OH 43215,                          §
                                             §
CoreCivic, Inc. dba Northeast Ohio           §
Correctional Center                          §
2240 Hubbard Rd.                             §
Youngstown, OH 44505 and                     §
c/o CT Corp Systems                          §
4400 Easton Commons Way, Ste. 125            §
Columbus, OH 43219, and                      §
                                             §
CoreCivic of Tennessee, LLC dba              §
Northeast Ohio Correctional Center           §
2240 Hubbard Rd.                             §
Youngstown, OH 44505                         §
c/o CT Corp Systems                          §
4400 Easton Commons Way, Ste. 125            §
Columbus, OH 43219,                          §
                                             §
                          Defendants          §
                                             §

## COMPLAINT

Now comes Plaintiff Jose Angel Carrizales ("Mr. Carrizales"), by and through his

undersigned counsel, and for his timely filed *Complaint* against the above captioned defendants,

Mr. Carrizales hereby avers and claims as follows:

2

### JURISDICTION, VENUE AND STATUTE OF LIMITATIONS

1. This is a civil rights, assault, battery, and malpractice action, arising from Defendants deliberate indifference to Mr. Carrizales' safety and serious medical needs, resulting in damages to Mr. Carrizales.

2. This Honorable Court has jurisdiction over this ripe case and controversy pursuant to 28 U.S.C. §1331 and 1343(a)(3)-(4) because it is being brought to obtain compensatory and punitive damages for the deprivation, under color of state law, of the rights of persons in the United States that are secured by the United States Constitution, pursuant to 42 U.S.C. §§1983. This action is brought pursuant to the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, the Americans with Disabilities Act ("ADA") – 42 U.S.C. §12132, and the laws and Constitution of the State of Ohio.

3. This Honorable Court has supplemental jurisdiction over any state law claims in this ripe case and controversy pursuant to 28 U.S.C. §1367.

4. This matter is timely filed within the pertinent statute of limitations, including but not limited to R.C. §§2305.09, 2305.10, 2305.111(B).

5. The last known address of each defendant is as set forth in the caption.

6. Venue in this judicial district is proper, pursuant to 28 U.S.C. §1391(b), because a substantial part of the events, actions, and/or omissions giving rise to the claims occurred near Youngstown, Ohio.

7. The Ohio Department of Medicaid may have a subrogation and/or reimbursement interest in the resolution of the instant dispute under the applicable law given medical benefits

that have been paid or may be paid by Ohio Department of Medicaid on the behalf of Mr. Carrizales related to his injuries alleged herein.

8. The Ohio Department of Medicaid regularly conducts business in Ohio and its principal office is located at the address captioned above.

9. CoreCivic, Inc. dba Northeast Ohio Correctional Center and/or CoreCivic of Tennessee, LLC dba Northeast Ohio Correctional Center (collectively, "CoreCivic") regularly conduct business in Ohio and their principal Ohio offices are located at the address captioned above.

10. CoreCivic operates for-profit prisons and detention facilities throughout the United States that maximizes value for its private shareholders by offering a minimum of staffing and service for the highest obtainable price to the governmental entities with whom it contracts to house detainees.

11. CoreCivic's principal place of business is in Nashville, Tennessee.

12. CoreCivic operated Northeast Ohio Correctional Center at all times relevant to this lawsuit.

13. Warden David Bobby supervised Northeast Ohio Correctional Center at all times relevant to this lawsuit.

14. Upon information and belief, the State of Ohio contracts with CoreCivic to provided correctional and medical services to Mr. Carrizales.

15. At all times relevant herein, CoreCivic was an entity of the State of Ohio which employed physicians, nurses, and other personnel to evaluate, care for and treat patients at CoreCivic's hospitals, clinics, and outpatient facilities.

16. CoreCivic provided medical training and education to matriculating students and retained physicians and other medical care personnel to provide supervision and instruction to students, interns, residents, and others.

17. At all ties relevant herein, CoreCivic and the State of Ohio employed physicians, nurses, and other personnel to evaluate, care for and treat patients at hospitals, clinics, and outpatient facilities, and acted through its agents and employees who were withing the course and scope of their employment.

18. Mr. Carrizales believes and therefor alleges that at all times relevant to the care and treatment of Mr. Carrizales, the medical care providers who rendered care and treatment were acting in the course and scope of their employment with CoreCivic or some other state hospital or entity, and Mr. Carrizales sues these Defendants for their involvement therein.

19. This complaint may be pled in the alternative, pursuant to Rule 8(d)(2) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

20. Mr. Carrizales alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

21. At all relevant times, it was each Defendant's duty to provide for the health, safety, and serious medical needs of persons in Defendants' custody, including Mr. Carrizales, as such persons had been deprived by the State of any means to protect themselves or care for their own medical needs.

22. In March of 2021, Mr. Carrizales was an inmate at the State of Ohio, Ohio Department of Rehabilitation & Correction, placed with CoreCivic at the Northeast Ohio Correctional Institution ("NEOCI"), at the address captioned above.

23. Upon information and belief, CoreCivic is an agent of the State of Ohio.

24. In March of 2021, Mr. Carrizales' hand was in the "cup port" of his jail cell waiting to receive food and drink when Correction Officer Lambert ("CO Lambert") intentionally smashed the cup port on Mr. Carrizales' hand substantially injuring the same.

25. Mr. Carrizales did nothing to provoke CO Lambert smashing Mr. Carrizales' hand.

26. Mr. Carrizales hand was swollen, bleeding, bruised, and in pain following the smashing injury.

27. Mr. Carrizales did not receive appropriate treatment for Mr. Carrizales' injured hand, and as such continues to suffer from shooting pain and continued discomfort in his hand.

28. The above captioned corrections officers failed to take appropriate steps to treat Mr. Carrizales' injured hand, choosing to only provide Mr. Carrizales with Tylenol.

29. Upon information and belief, CO Lambert resigned from the NEOCI and is not eligible for rehire.

30. Following the assault, not only was Mr. Carrizales denied appropriate medical care, but he was treated badly by the other above captioned corrections officers at the NEOCI and was often placed in solitary confinement for no reason.

31. Since the assault, Mr. Carrizales' hand has not healed properly.

32. Mr. Carrizales submitted a records request to the NEOCI for Mr. Carrizales' jail and medical records related to Mr. Carrizales' injured hand.

33. NEOCI failed to provide Mr. Carrizales with jail and medical records related to Mr. Carrizales' injured hand.

34. NEOCI only disclosed alleged medical care by Nicole Kolenich, RN but no medical records on the diagnosis or treatment of Mr. Carrizales' injured hand in this assault.

35. Upon information and belief, Nicole Kolenich, RN, NEOCI, CoreCivic, John/Jane Does 1-25, and Ohio failed diagnose and treat Mr. Carrizales' injured hand.

36. Due to Defendants' wrongful decisions, acts, and deliberate omissions, Mr. Carrizales' hand was intentionally injured and then not medically treated such that Mr. Carrizales' hand has not healed properly.

37. Defendants' deliberate indifference to Mr. Carrizales' safety and serious medical needs, along with the safety and serious medical needs of all NEOCI inmates and staff, and Defendants' other tortious, unconstitutional, and/or otherwise wrongful conduct caused Mr. Carrizales' injuries.

38. At all material times and, alternatively, the actions and omissions of Defendants were intentional, and/or wanton and/or willful, and/or conscience-shocking, and/or reckless, and/or callous, and/or malicious, and/or deliberately indifferent to Mr. Carrizales' rights, and/or grossly negligent, and/or negligent.

39. As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Mr. Carrizales' sustained a damages, including but not limited to the following: A) an injured hand that failed to heal properly; B) Loss of support and familial relationships,

including loss of love, companionship, comfort, affection, society, services, solace, and moral support; C) Emotional distress from the violations of their personal Constitutional rights, including grief, sorrow, anxiety worry, anger, humiliation, and indignity; D) Loss of enjoyment of life; E) All other legally cognizable special and general damages; F) Violations of state and federal constitutional rights; and, G) All damages, punitive damages, and penalties recoverable under 42 U.S.C. §§1983, 1988, and 12132 and as otherwise allowed under Ohio law and United States statutes, codes, and common law.

### COUNT ONE (1): VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983

40. Mr. Carrizales alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

41. By the actions and omissions described above, Defendants acting under the color of state law in their individual capacities, deprived Mr. Carrizales of the rights, privileges, and immunities secured by the First, Fourth, Eighth, and Fourteenth Amendments by subjecting him, or through their deliberate indifference, allowing others to subject him, to inhumane conditions of confinement and obviously unsafe conditions that created and increased Mr. Carrizales' damages stated above, then Defendants interfered with Mr. Carrizales' right to familial association while he battled for his health, making medical decisions for him without ever communicating with his family or getting their input, failing or refusing to ascertain his designated emergency contacts and medical surrogates, and all Defendants ultimately caused Mr. Carrizales' permanent impairment.

42. Defendants further had a duty to provide Mr. Carrizales humane, safe, and sanitary living conditions, including a duty to act to treat injured hands.

43. The Defendants ignored, delayed, and/or denied to Mr. Carrizales urgently needed measures and care necessary to maintain reasonably safe conditions for him at NEOCI, and to address his safety and serious medical needs.

44. As a result of the Defendants' deliberate indifference to both Mr. Carrizales' safety and medical needs, Mr. Carrizales suffered damages and deprivation of constitutional rights, as described herein.

45. The various above captioned corrections officers who interacted and/or treated Mr. Carrizales are agents of the NEOCI acting within the scope and direction of NEOCI.

46. The various above captioned corrections officers, supervisors, and NEOCI acted with knowledge or reason to know of facts that would lead a reasonable person to believe that their conduct creates an unnecessary risk of physical harm and that such risk is greater than that necessary to make the conduct negligent in injuring Mr. Carrizales.

47. The various above captioned corrections officers, supervisors, and NEOCI acted with a perverse disregard of a known risk in injuring Mr. Carrizales.

48. The various above captioned corrections officers, supervisors, and NEOCI, and their agents, acted under color of state law to deprive Mr. Carrizales of rights, privileges, or immunities secured by the Constitution or laws of the United States, including but not limited to the Fourth Amendment.

49. The various above captioned corrections officers, supervisors, and NEOCI, and their agents, acted under color of state law to deprive Mr. Carrizales of rights, privileges, or immunities secured by the Constitution or laws of the United States, including but not limited to the Eighth Amendment.

50. The various above captioned corrections officers, supervisors, and NEOCI, and their agents, acted under color of state law to deprive Mr. Carrizales of rights, privileges, or immunities secured by the Constitution or laws of the United States, including but not limited to the Fourteenth Amendment.

51. As a direct result of said defendants' actions, Mr. Carrizales has suffered, and will continue to suffer, physical and mental injuries, and has incurred, and will incur in the future lost income, transportation expenses, and medical expenses.

52. As a direct result of said defendants' actions, Mr. Carrizales suffered a permanent physical deformity.

53. Upon information and belief, these Defendants implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the above captioned offending correction officers.

54. Mr. Carrizales' constitutional right to be free from cruel and unusual punishment was a clearly established constitutional right in March of 2021.  See Jones v. Muskegon Cty. (6th Cir. 2010), 625 F.3d 935, 941.

55. The constitutional right to be free from excessive force was a clearly established constitutional right in March of 2021.

56. Upon information and belief, these Defendants were aware of Mr. Carrizales' constitutional right to be free from excessive force.

57. Upon information and belief, these Defendants were aware of Mr. Carrizales' constitutional right to be free from cruel and unusual punishment.

58. These Defendants actively participated in the use of excessive force against Mr. Carrizales in the NEOCI on or in March of 2021.

59. These Defendants actively participated in cruel and unusual punishment against Mr. Carrizales in the NEOCI on or in March of 2021.

60. The above-named officers were supervised and/or trained in the use of appropriate force on or before March of 2021.

61. The above-named officers were supervised and/or trained in the use of appropriate punishment on or before March of 2021.

62. In March of 2021, these Defendants owed a duty of protection to Mr. Carrizales against the use of excessive force.

63. In March of 2021, these Defendants owed a duty of protection to Mr. Carrizales against the use of cruel and unusual punishment.

64. Through their actions and omissions stated herein, these Defendants used excessive force against Mr. Carrizales in violation of Mr. Carrizales' clearly established and known Fourth Amendment constitutional rights.  See Graham v. Connor (1989), 490 U.S. 386, 395.

65. Through their actions and omissions stated herein, these Defendants acted with a sufficiently culpable state of mind equivalent to criminal recklessness in the attack against Mr. Carrizales at the NEOCI.  See Farmer v. Brennan (1994), 511 U.S. 825, 838.

66. Through their actions and omissions stated herein, these Defendants so recklessly ignored the risk of injury to Mr. Carrizales that these Defendants was deliberately indifferent to the risk of injury to Mr. Carrizales.

67. By the actions and omissions described above, the individually named Defendants violated 42 U.S.C. §1983, deprived Mr. Carrizales of the following well-settled constitutional rights that are protected by the First, Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution: a) The right to be free from deliberate indifference to Mr. Carrizales' safety and medical needs while in state custody as an inmate, as secured by the Eighth Amendment; and b) The right to be free from wrongful government interference with familial relationships and right to companionship, society, and support of each other, as secured by the  First and Fourteenth Amendments.

68. Defendants subjected Mr. Carrizales to their wrongful conduct, depriving Mr. Carrizales of the rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Mr. Carrizales and others would be violated by their acts and/or omissions.

69. As a proximate result of the foregoing wrongful acts and/or omissions, Mr. Carrizales sustained injuries and damages, as set forth above.  Mr. Carrizales is, therefore, entitled to general and compensatory damages in an amount to be proven at trial.

70. In committing the acts alleged above, Defendants acted maliciously, oppressively, and/or with reckless disregard for the rights and safety of Mr. Carrizales, and others, and by reason thereof, Mr. Carrizales and others are entitled to punitive damages and penalties allowable under 42 U.S.C. §1983, Ohio law and other state and federal law against the individual Defendants.

71. Mr. Carrizales is also entitled to reasonable costs and attorney's fees under 42 U.S.C. §1988 and other applicable Ohio codes and laws.

72. As a direct result of said deprivation of his constitutional rights in violation of 42 U.S.C. §1983, Mr. Carrizales has been damaged in an amount more than Seventy-Five Thousand Dollars ($75,000.00), as will be more fully proven in either a trial or dispositive motion in this matter.

### COUNT TWO (2): VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983 (SUPERVISORY LIABILITY)

73. Mr. Carrizales alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

74. Prior to filing suit, Mr. Carrizales requested his medical records, prison records, and the training manuals related to this matter.

75. These Defendants wrote in response that there were no such training manuals.

76. Mr. Carrizales alleges, upon information and belief, the unconstitutional actions and/or omissions of the individually named Defendants and/or others acting on behalf of Defendants were pursuant to the following customs, policies, practices, procedures and official decisions of Defendants, stated in the alternative, which were made, directed, approved, encouraged, allowed, and/or ratified by policymaking officials for NEOCI, including, but not limited to, refusal and failure to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint when the need for such was obvious, with deliberate indifference to the rights and safety of Mr. Carrizales, and the public, and in the face of an obvious need for such policies, procedures, and training programs.

13

77. Mr. Carrizales reasonably believes that the Defendants maintain, actively or by omission, a policy or practice that approves of such unlawful, malicious, and outrageous conduct by their above captioned correction officers in violation of written policies and procedures mandating otherwise.

78. Defendants condoned, encouraged, or participated in the alleged conduct against Mr. Carrizales as described above.  See Birrell v. Brown (6th Cir. 1989), 867 F.2d 956, 959.

79. Mr. Carrizales reasonably believes that Defendants maintain, actively or by omission, a policy or practice that approves of escalation of violence as a response to inmate disputes such as the aforementioned unlawful, malicious, and outrageous conduct by their above captioned correction officers in violation of written policies and procedures mandating otherwise.

80. In the alternative, Mr. Carrizales reasonably believes that Defendants' failure to adequately train their respective correction officers amounts to deliberate indifference to the rights of persons with whom its officers come into contact such that said correction officers violated federal and state law in their treatment of Mr. Carrizales.

81. In the alternative, Mr. Carrizales reasonably believes that Defendants' failure to adequately train their respective correction officers on less violent responses to inmates talking amounts to deliberate indifference to the rights of persons with whom its officers come into contact such that said correction officers violated federal and state law in their treatment of Mr. Carrizales.

82. In the alternative, Mr. Carrizales reasonably believes that Defendants' failure to properly hire, train, instruct, monitor, supervise, evaluate, and investigate, their respective

correction officers on the actions and/or omissions above amounts to deliberate indifference to the rights of persons with whom its officers come into contact such that said correction officers violated federal and state law in their treatment of Mr. Carrizales.

83. The above referenced policies, customs, practices, or omissions of the Defendants played a part in the violation of federal and state law against Mr. Carrizales.

84. The unconstitutional actions, choices and/or conduct of Defendants, as described above, were approved, tolerated, and/or ratified by policy making officers for Defendants.

85. The aforementioned customs, policies, practices, procedures and official decisions; the failure to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and, the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants were a moving force and/or a proximate cause of the deprivations of Mr. Carrizales' clearly established and well-settled constitutional rights, in violation of 42 U.S.C. §1983, as more fully set forth above in Count One.

86. As a direct result of such above referenced policies, customs, practices, or omissions on the part of the Defendants, Mr. Carrizales has suffered, and will continue to suffer, physical and mental injuries; and has incurred, and will incur in the future, lost income, and medical expenses.

87. As a direct and proximate result of the foregoing unconstitutional actions, omissions, customs, polices, practices, procedures, official decisions, and improper supervision of Defendants, Mr. Carrizales sustained serious and permanent injuries and damages and are entitled to damages, penalties, costs, and attorneys' fees, as set forth above, and punitive damages against Defendants in their individual capacities.

88. As a direct result of said Defendants' actions, Mr. Carrizales suffered permanent physical deformity.

89. Mr. Carrizales says that such policy or practice has the effect of depriving Mr. Carrizales of his constitutional rights in violation of 42 U.S.C. §1983, such that Mr. Carrizales has been damaged in an amount more than Seventy-Five Thousand Dollars ($75,000.00) as will be more fully proved in either a trial or dispositive motion in this matter.

### COUNT THREE (3): INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

90. Mr. Carrizales alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

91. As described above, CO Lambert knew or should have known that CO Lambert's actions against Mr. Carrizales would result in serious physical and mental and emotional injuries and distress to Mr. Carrizales.  See Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369, 374-75.

92. As described above, CO Lambert's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.  See Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369, 374-75.

93. As described above, CO Lambert's actions were the proximate cause of Mr. Carrizales' injuries.  See Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369, 374-75.

94. As described above, Mr. Carrizales' physical, mental, and emotional injuries suffered are serious and of a nature that no reasonable man could be expected to endure such injuries. See Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369, 374-75.

95. As described above, CO Lambert acted with actual malice towards Mr. Carrizales.

96. As described above, CO Lambert acted with a conscious disregard for the safety of Mr. Carrizales where there was a significant risk of substantial harm to Mr. Carrizales.

97. As a direct result of said CO Lambert's actions, Mr. Carrizales suffered permanent and substantial physical deformity.

98. As a direct result of said CO Lambert's intentional infliction of emotional distress, Mr. Carrizales has been damaged in an amount more than Seventy-Five Thousand Dollars ($75,000.00), as will be more fully proven in either a trial or dispositive motion in this matter.

### COUNT FOUR (4): ASSAULT

99. Mr. Carrizales alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

100. As described above, CO Lambert assaulted Mr. Carrizales when CO Lambert intentionally offered or attempted, without authority or consent, to harm or offensively touch Mr. Carrizales as described above that reasonably placed Mr. Carrizales in fear of such contact by CO Lambert.  See Batchelder v. Young (Ohio App. 11 Dist., 2005), 11th Dist. Trumbull No. 2005-T-0150, 2006-Ohio-6097, ¶ 23, fn. 3.

101. CO Lambert acted with actual malice towards Mr. Carrizales.

102. CO Lambert acted with a conscious disregard for the safety of Mr. Carrizales where there was a significant risk of substantial harm to Mr. Carrizales.

103. As a direct result of said CO Lambert 's actions, Mr. Carrizales suffered permanent and substantial physical deformity.

17

104.    As a direct result of said CO Lambert 's assault, Mr. Carrizales has been damaged in an amount more than Seventy-Five Thousand Dollars ($75,000.00), as will be more fully proven in either a trial or dispositive motion in this matter.

## COUNT FIVE (5): BATTERY

105.    Mr. Carrizales alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

106.    As described above, CO Lambert intentionally touched Mr. Carrizales' person without Mr. Carrizales' consent.  See Snyder v. Turk (Ohio App. 2 Dist., 1993), 90 Ohio App.3d 18, 23; Batchelder, supra, at ¶ 23, fn. 3.

107.    As described above, CO Lambert acted with the intent to cause a harmful or offensive contact with Mr. Carrizales, and the said harmful contact with Mr. Carrizales resulted. See Love v. Port Clinton (1988), 37 Ohio St.3d 98, 99.

108.    As described above, CO Lambert intended to batter Mr. Carrizales when CO Lambert slammed Mr. Carrizales' hand in the cell door.  See Harasyn v. Normandy Metals, Inc. (1990), 49 Ohio St.3d 173, 175.

109.    As described above, CO Lambert desired to cause the consequences of CO Lambert's actions against Mr. Carrizales.  See Harasyn v. Normandy Metals, Inc. (1990), 49 Ohio St.3d 173, 175.

110.    As described above, CO Lambert believed that the consequences of CO Lambert's actions against Mr. Carrizales were substantially certain to result in substantial harm. See Harasyn v. Normandy Metals, Inc. (1990), 49 Ohio St.3d 173, 175.

111.    As described above, CO Lambert acted with actual malice towards Mr. Carrizales.

112.    As described above, CO Lambert acted with a conscious disregard for the safety of Mr. Carrizales where there was a significant risk of substantial harm to Mr. Carrizales.

113.    As a direct result of said CO Lambert's actions, Mr. Carrizales suffered permanent and substantial physical deformity.

114.    As a direct result of said CO Lambert's batteries, Mr. Carrizales has been damaged in an amount more than Seventy-Five Thousand Dollars ($75,000.00), as will be more fully proven in either a trial or dispositive motion in this matter.

### COUNT SIX (6): SPOLIATION OF EVIDENCE

115.    Mr. Carrizales alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

116.    The Defendants knew of pending or probable litigation involving Mr. Carrizales. See Smith v. Howard Johnson (1993), 67 Ohio St.3d 28, 29.

117.    Mr. Carrizales requested evidence of CO Lambert's assault and battery. See Smith v. Howard Johnson (1993), 67 Ohio St.3d 28, 29.

118.    Defendants failed to provide Mr. Carrizales with evidence of CO Lambert's assault and battery. See Smith v. Howard Johnson (1993), 67 Ohio St.3d 28, 29.

119.    Upon information and belief, Defendants modified Mr. Carrizales' medical records to show lesser damages after CO Lambert's assault and battery than what occurred.

120.    Defendants reported the lack of video evidence of the assault on Mr. Carrizales.

19

121. The Defendants willfully destroyed evidence to disrupt Mr. Carrizales' case.  See Smith v. Howard Johnson (1993), 67 Ohio St.3d 28, 29.

122. Defendants' destruction of evidence disrupts Mr. Carrizales' case.  See Smith v. Howard Johnson (1993), 67 Ohio St.3d 28, 29.

123. As described above, the Defendants acted with actual malice towards Mr. Carrizales.

124. As described above, the Defendants acted with a conscious disregard for the safety of Mr. Carrizales where there was a significant risk of substantial harm to Mr. Carrizales.

125. Defendants' destruction of evidence damaged Mr. Carrizales in an amount more than Seventy-Five Thousand Dollars ($75,000.00), as will be more fully proven in either a trial or dispositive motion in this matter.  See Smith v. Howard Johnson (1993), 67 Ohio St.3d 28, 29.

## COUNT SEVEN (7): NEGLIGENCE

126. Mr. Carrizales alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

127. Mr. Carrizales' said medical providers, individually or by and through agents or employees, were professionally negligent and fell below the accepted standards of medical care in that they failed to exercise the degree of care required of reasonably skillful and prudent physicians, specialists, and/or other health care professionals under similar circumstances by, inter alia, failing to diagnose, treat, and obtain Mr. Carrizales' informed consent on Mr. Carrizales' hand.

20

128.     Mr. Carrizales' said medical providers, individually or by and through agents or employees, negligently supervised, trained, and retained Mr. Carrizales' said medical providers.

129.     As a direct and proximate result of Mr. Carrizales' said medical providers' negligence as stated above, Mr. Carrizales underwent or will undergo, medical care and treatment, experienced great pain, and suffering, suffered great pain of body and mind, a loss of enjoyment of life, lost income, and mental anguish.

130.     Because of the negligent medical care and treatment provided by Mr. Carrizales' said medical providers, Mr. Carrizales suffered severe and permanent injuries and will continue to suffer in the future due to the permanent nature of Mr. Carrizales' injuries.

131.     As a further direct and proximate result of the negligence of Mr. Carrizales' said medical providers, Mr. Carrizales incurred hospital, medical, and other related expenses, and will continue to incur the same in the future due to the permanent nature of Mr. Carrizales' injuries.

132.     Nicole Kolenich, RN, John and Jane Does 1-25, CoreCivic, and/or Ohio owed a duty to Mr. Carrizales to provide him with medical care at or exceeding the minimum standards of care, to provide him with adequate and timely medical care, and to ensure that he was accurately informed of the material information about his medical care.  Nicole Kolenich, RN, John and Jane Does 1-25, CoreCivic, and/or Ohio bore continuing responsibility to Mr. Carrizales to care for him, consistent with the standards of care, in a timely and appropriate manner.

133. Nicole Kolenich, RN, John and Jane Does 1-25, CoreCivic, and/or Ohio breached their duty to Mr. Carrizales by failing to treat him within or exceeding the minimum standards of care.

134. Nicole Kolenich, RN, John and Jane Does 1-25, CoreCivic, and/or Ohio held themselves out as being qualified to care and accept responsibility for Mr. Carrizales. Nicole Kolenich, RN, John and Jane Does 1-25, CoreCivic, and/or Ohio directly oversaw Mr. Carrizales' medical care as a patient of CoreCivic and Ohio.

135. Nicole Kolenich, RN, John and Jane Does 1-25, CoreCivic, and/or Ohio provided, ordered, and received consultations from numerous medical professionals, but did not communicate to Mr. Carrizales about Mr. Carrizales' injured hand.

136. Nicole Kolenich, RN, John and Jane Does 1-25, CoreCivic, and/or Ohio as a physician for CoreCivic and Ohio had a duty and responsibility to communicate with their patients accurately and honestly, including Mr. Carrizales.

137. This failure to meet or exceed the standards of care and communicate accurately and honestly with Mr. Carrizales was a direct and proximate cause of the harms and losses Mr. Carrizales sustained and continues to experience.

138. When Defendants finally provide Mr. Carrizales with his medical records, Mr. Carrizales will amend his complaint with the required affidavit of merit.

139. Since Mr. Carrizales' injuries are permanent, he will require additional care and treatment and will incur further medical expenses for said treatment, and thus will suffer continued physical pain, mental anguish and extreme emotional distress, loss of income and

loss of earnings capacity, as well as the loss of enjoyment of life and the ability to perform usual and customary activities, indefinitely into the future.

140.    Mr. Carrizales' said medical providers damaged Mr. Carrizales more than Seventy-Five Thousand Dollars ($75,000.00), as will be more fully proven in the trial on the merits herein.

COUNT EIGHT (8): INFORMED CONSENT

141.    Mr. Carrizales alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

142.    Mr. Carrizales' said medical providers failed to timely and fully inform Mr. Carrizales of the risks inherent in the management and treatment plan pursued by Mr. Carrizales' said medical providers and/or failed to timely advise Mr. Carrizales of accepted medical treatment alternatives and, therefore, failed to obtain Mr. Carrizales' informed consent when they diagnosed and treated Mr. Carrizales' hand.

143.    Had Mr. Carrizales been timely, fully, and properly informed of the risks inherent in the management and treatment plan pursued by Mr. Carrizales' said medical providers and/or advised by Mr. Carrizales' said medical providers of accepted medical treatment alternatives, Mr. Carrizales would not have consented to the management and treatment plans pursued by Mr. Carrizales' said medical providers.

144.    As a direct and proximate result of the failure of Mr. Carrizales' said medical providers to obtain informed consent, Mr. Carrizales sustained injury due to the risks inherent in Mr. Carrizales' said medical providers' management and treatment plans.

145.    As a further direct and proximate result of Mr. Carrizales' said medical providers actions or omissions, Mr. Carrizales incurred hospital, medical, and other related expenses, and will continue to incur the same in the future due to the permanent nature of Mr. Carrizales injuries.

146.    Mr. Carrizales' said medical providers damaged Mr. Carrizales more than Seventy-Five Thousand Dollars ($75,000.00), as will be more fully proven in the trial on the merits herein.

### COUNT NINE (9): NEGLIGENCE & VICARIOUS LIABILITY

147.    Mr. Carrizales alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

148.    John/Jane Doe #1-25 are persons and/or businesses whose names and addresses could not be discovered.

149.    Upon information and belief, John/Jane Doe #1-25 committed negligent acts and/or omissions which directly and proximately cause Mr. Carrizales' injuries and damages as stated in this Complaint.

150.    Upon information and belief, John/Jane Doe #1-25 are employees or agents for CoreCivic and Ohio.

151.    CoreCivic and Ohio are vicariously liable for the negligent acts and/or omissions of John/Jane Doe #1-25 which directly and proximately caused Mr. Carrizales' injuries and damages as stated in this Complaint.

24

152.     Nicole Kolenich, RN, John and Jane Does 1-25, CoreCivic, and/or Ohio   damaged

Mr. Carrizales more than Seventy-Five Thousand Dollars ($75,000.00), as will be more fully

proven in the trial on the merits herein.

### COUNT TEN (10): VIOLATION OF ADA (TITLE II) AND RA
### 42 U.S.C. §12132 & 29 U.S.C. §794

153.     Mr. Carrizales alleges and incorporates herein every allegation set forth in the

preceding paragraphs as though the same were fully rewritten herein.

154.     Title II of the ADA prohibits discrimination based on disability by public entities,

which the Act broadly defines as "any department, agency, special purpose district, or other

instrumentality of a State or States or local government[.]" 42 U.S.C. §12131(1)(B).

155.     Similarly, §504 of the Rehabilitation Act of 1973 proscribes discrimination by

"any program or activity [,]" 29 U.S.C. §794(a), defined as "all of the operations of a department,

agency, special purpose district, or other instrumentality of a State or of a local government." 29

U.S.C. §794(b).

156.     CoreCivic is a covered entities for purposes of enforcement of the ADA, 42 U.S.C.

§12181(7)(F), and the Rehabilitation Act, 29 U.S.C. §794, pursuant to the regulations

promulgated under each of these laws.

157.     Defendants are also within the mandate of the RA that no person with a

disability may be "excluded from the participation in, be denied the benefits of, or be subjected

to discrimination under any program or activity." 29 U.S.C. §794.

158. Congress enacted the ADA upon a finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. §12101 (a)(2).

159. Title II of the ADA provides: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132.

160. Discrimination under the ADA and RA includes not only, e.g., a denial of benefits and services, but also a failure to provide a reasonable accommodation (also known as reasonable modification) for an individual's disability.

161. Defendants are further mandated under the ADA not to utilize standards or criteria or methods of administration that have the effect of discriminating based on disability. 42 U.S.C. §12182(b)(1)(D)(i).

162. Discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities." 42 U.S.C. §12182(b)(2)(A)(ii).

163. At all material times, as a person with an injured hand, Mr. Carrizales was a "qualified individual" with medical impairments that limited and/or substantially limited his ability to care for himself and control his mental, medical, or physical health condition as defined under the ADA, 42 U.S.C. §12131(2), and under Section 504 of the Rehabilitation Act

("RA") of 1973, 29 U.S.C. §794, 28 C.F.R. 42.540(k).  Through their employees and agents, Defendants had knowledge of Mr. Carrizales' disabilities.

164.    As a "qualified [disabled] individual," Defendants were required to make reasonable accommodations for Mr. Carrizales' disabilities and provide access to medical and other appropriate services while he was in custody as an inmate.

165.    Mr. Carrizales' status as a qualified disabled person also required Defendants not to engage in discrimination based on disparate treatment or impact to disabled persons like Mr. Carrizales.

166.    Defendants discriminated against Mr. Carrizales by failing to place him in a setting, and/or failing to provide appropriate services, to reasonably accommodate his disability and treatment needs.  Defendants' failure to reasonably accommodate Mr. Carrizales' disabilities during his incarceration caused him to suffer greater injury and indignity in that process than other non-disabled inmates.

167.    Because of the acts and omissions of the individual Defendants and others, working as employees and/or agents of Defendants, Mr. Carrizales was unable to utilize virtually all facilities, programs, and services without risk of serious harm.  Defendants failed to reasonably accommodate Mr. Carrizales' disabilities as required by law making him highly susceptible to grave harm.

168.    Further, all of Defendants' actions, choices, and decisions were policies or procedures, or a product thereof, instituted by Defendants that had a disparate impact on Mr. Carrizales due to his disabilities, in violation of his rights under the ADA and RA.

169.    Thus, due to Defendants' failure to reasonably accommodate Mr. Carrizales' disabilities, and Defendants' conduct and decisions that had a disparate impact on him and other similarly disabled individuals, causing Mr. Carrizales to suffer greater injury and indignity than other non-disabled inmates, Defendants effectively treated non-disabled inmates more favorably than individuals with Mr. Carrizales' disabilities.

170.    As a result of the acts and misconduct of Defendants complained of herein, Mr. Carrizales suffered immensely and will continue to suffer damages and injuries as alleged above.  Mr. Carrizales sustained serious and permanent injuries and are entitled to damages, penalties, costs, and attorneys' fees.

**WHEREFORE**, Mr. Carrizales prays this Honorable Court will grant Mr. Carrizales the following relief:

A.  Joint and several judgments against said defendants in an amount more than Seventy-Five Thousand Dollars ($75,000.00), plus punitive damages, interest including pre-judgment and post judgment interest, costs, attorneys' fees;

B.  An award of attorneys' fees against said defendants in favor of Mr. Carrizales under 42 U.S.C. §1988(b);

C.  An award of expert fees against said defendants in favor of Mr. Carrizales under 42 U.S.C. §1988(c);

D.  Judgment declaring Ohio Department of Medicaid's subrogation and/or reimbursement interest in any award herein, less Mr. Carrizales' collection costs thereof, under the applicable law given medical benefits that may have been paid or may be paid by Ohio Department of Medicaid on the behalf of Mr. Carrizales related to his injuries alleged

herein and/or judgment barring any such recovery unless and until Mr. Carrizales is made whole; and

E.  For all other relief, as may be necessary and appropriate and/or to which Mr. Carrizales is entitled, as a matter of law and/or equity, including but not limited, reasonable attorneys' fees, costs, and interest.

Respectfully submitted,

TOMPKINS, SELPH, & ASSOCIATES, LTD.

 /s/ *Theran J. Selph, Sr.*
Theran J. Selph, Sr.     (0079376)
Sarah M. Schregardus (0080932)
PO Box 341318
Columbus, Ohio 43234-1318
(614) 453-0971/(866) 519-5298 (facsimile)
tselph@selphlaw.com
sarahs@selphlaw.com
*Counsel for Plaintiff Jose Angel Carrizales*

## JURY DEMAND

Pursuant to Rule 38, of the Federal Rules of Civil Procedure, Mr. Carrizales hereby requests a trial by jury on all issues triable by a jury.

*/s/ Theran J. Selph, Sr.*
Theran J. Selph, Sr.     (0079376)
*Counsel for Plaintiff Jose Angel Carrizales*

###

29